# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DON J. ERSERY, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 11-0797-CV-W-HFS-P |
| LARRY DENNEY, | ) |
| Respondent. | ) |

### OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Don J. Ersery, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 10, 2011, seeking to challenge his 2006 convictions and sentences for second degree murder and abandonment of a corpse, which were entered in the Circuit Court of Jackson County, Missouri.

Petitioner raises nine grounds for relief: (1) the trial court erred when it overruled his motion to suppress evidence which was seized in violation of the Fourth Amendment; (2) trial counsel was ineffective for failing to object when Officer Shaw testified that she considered petitioner to be a suspect after interviewing witnesses; (3) appellate counsel was ineffective for failing to claim the trial court erred in excluding testimony concerning Mr. Bradley; (4) that "new discovered evidence" has led petitioner to believe that the use of a "20 hour hold" to detain him rather than an arrest warrant was unlawful; (5) that "new discovered evidence" shows that trial counsel was ineffective for failing to investigate the false complaint issue; (6) that "new discovered evidence" shows that trial counsel was ineffective for failing to investigate why petitioner was not given a preliminary hearing; (7) that "new discovered evidence" shows that trial counsel was ineffective for failing to investigate why

petitioner was issued the same indictment on two different days and amending the indictment to a higher offense without resubmitting it to the grand jury; (8) that "new discovered evidence" shows that post-conviction relief counsel was ineffective for failing to call their fingerprint expert to testify at the evidentiary hearing when the expert could have excluded petitioner's thumb print from being a match to the print on duct tape used in the crime; and (9) the prosecution erred in its closing argument by shifting the burden of proof to the defense and arguing facts not in evidence. Respondent contends that grounds 1, 2, 3, and 8 are without merit, and that grounds 4, 5, 6, 7, and 9 are procedurally defaulted.

## SUMMARY OF FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> On December 5, 2005, Anjuana Watts filed a missing persons report on her mother, Alverda Watts, whom she had been unexpectedly unable to contact or locate since before Thanksgiving. On December 14, 2005, Alverda's body was discovered in a ravine in a wooded area near 22nd Street and Lydia in Kansas City, Missouri. Her body was stuffed in a green duffle bag with her feet protruding from the end. The body was further wrapped in clear plastic secured with duct tape and a blue blanket that was tied around it with a telephone cord. A subsequent autopsy revealed that Alverda had died as a result of blunt trauma and asphyxia.
>
> Prior to her disappearance, Alverda had been living in an apartment with [petitioner] in Kansas City. Because [petitioner] was the last person known to have been seen with Alverda, the police attempted to contact [petitioner] at the apartment but were unsuccessful in doing so. After speaking with a security guard for the apartment building and with Anjuana, the police focused their investigation on [petitioner]. After obtaining a search warrant, police officers conducted a search of [petitioner's] apartment. In the bedroom, officers found small traces of blood on the closet door, the carpet, the underside of the mattress, and on two walls. In addition, the police found coveralls lying on top of the bed that had blood on them. The police also discovered a telephone in the apartment that was missing its cord.

> Subsequent testing indicated that the blood in the room and on the coveralls was human. When the materials used to wrap the body were analyzed, [petitioner's] fingerprint was discovered on a piece of the duct tape.
>
> [Petitioner] was arrested and charged with murder in the second degree and abandonment of a corpse. Following a jury trial, [petitioner] was found guilty as charged. [Petitioner] was ultimately sentenced to a term of twenty years on the murder count to be served consecutively to a term of four years on the abandonment of a corpse count.

(Respondent's Exhibit D, pp. 2-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In ground 1, petitioner contends that the trial court should have granted his motion to suppress evidence that was obtained in violation of the Fourth Amendment. Ground 1 is barred from federal habeas corpus review by the doctrine of Stone v. Powell, 428 U.S. 465 (1976). "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. See also Willett v. Lockhart, 37 F.3d 1265, 1271-73 (8th Cir. 1994) (adopting two-part Second Circuit test for Stone bar). Because the record reflects that the state provided petitioner with an opportunity to fully and fairly litigate his Fourth Amendment claim, the bar of Stone v. Powell applies.

Ground 1 is denied.

## **GROUNDS 2 & 3**

In his second ground for relief, petitioner contends that trial counsel was ineffective for failing to object when Officer Shaw testified that she considered petitioner to be a suspect after interviewing witnesses. In his third ground for relief, petitioner contends that appellate counsel was ineffective for failing to claim that the trial court erred in excluding testimony about Mr. Bradley which consisted of statements that would serve to impeach another witness.

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> At trial, the State asked Detective Shaw if she continued to focus on [petitioner] during the investigation after obtaining information from the apartment security manager, and she answered in the affirmative. The State then asked if she continued to focus on [petitioner] after obtaining information from Ms. Ajuana and Ms. Nelson. Trial counsel did not object to any of the statements. [Petitioner] claims that trial counsel should have objected because Detective Shaw's testimony improperly bolstered or vouched for the previous witnesses' testimonies because it impliedly stated, "these witnesses gave information incriminating [petitioner], she believed the testimony, and she therefore continued to focus her investigation on [petitioner]."
>
> Improper bolstering occurs when a witness's credibility has not been challenged but out-of-court-statements from that witness are offered to duplicate or corroborate trial testimony. *State v. Christeson*, 50 S.W.3d 251, 267 (Mo. banc 2001). And improper vouching occurs

Case 4:11-cv-00797-HFS   Document 11   Filed 02/17/12   Page 4 of 11

when a witness's opinion on another witness's credibility invades the jury's province. n.3  *See State v. Shaffer*, 251 S.W.3d 356, 358 (Mo. App. S.D. 2008).

> n.3 A witness's credibility is a question for the jury, which may believe all, some, or none of the witness's testimony.  *See State v. Garner*, 14 S.W.3d 67, 73 (Mo. App. E.D. 1999).

Here, Detective Shaw's statements did not constitute duplicative or corroborative testimony of those witnesses who testified because her statements did not contain any out-of-court statements.  *See Christeson*, 50 S.W.3d at 267 (finding no error in allowing summary of witness's testimony because the summary did not involve an out-of-court statement).  Additionally, Detective Shaw's statements did not vouch for those witnesses because the statements were made to explain her continued focus on [petitioner] after being unsuccessful in her attempts to contact him.  *See Shaffer*, 251 S.W.3d at 358.  Moreover, her statements did not comment on the witnesses' testimonies before the court.  Consequently, any objection to Detective Shaw's statements would properly have been overruled.  Accordingly, the motion court did not clearly err in finding against ineffectiveness of trial counsel for failing to object to Detective Shaw's statements. [Petitioner's] point is denied.

. . .

In his opening statement, [petitioner] stated that he would adduce testimony that Ms. Alverda had been seen after Thanksgiving with a man who was not [petitioner], but was possibly her other boyfriend, Mr. William Bradley.  Defense counsel called Mr. Mosley to establish Ms. Alverda had an intimate relationship with Mr. Bradley around Thanksgiving 2005 based on his statements to Detective Shaw that Ms. Alverda was "messing around" with Mr. Bradley before she met [petitioner] and during Thanksgiving 2005.  However, when asked at trial what type of relationship Ms. Alverda had with Mr. Bradley, Mr. Mosley stated that Mr. Bradley was Ms. Alverda's friend rather than her boyfriend.  Defense counsel then attempted to introduce Mr. Mosley's prior inconsistent statement by reading from Detective Shaw's report, but the State objected on the ground of improper impeachment.  The trial court sustained the objection.  After Mr. Mosley stated he did not remember if he told Detective Shaw that Ms. Alverda and Mr. Bradley were "messing around." [sic] Defense counsel again attempted to introduce Mr. Mosley's prior statements. The State objected that it was irrelevant and argumentative, and the

trial court sustained it. Subsequently, defense counsel asked Mr. Bradley's height, and Mr. Mosley replied that Mr. Bradley was 5'2". He had previously stated that Mr. Bradley was about 5'9". However, defense counsel did not attempt to introduce this prior inconsistent statement. Instead, defense counsel attempted to call other witnesses who would testify to Mr. Bradley's height. It [sic] also attempted to call Detective Shaw to introduce Mr. Mosley's statement about the nature of Ms. Alverda's relationship with Mr. Bradley. The trial court refused to admit the additional evidence.

Prior inconsistent statements are admissible as substantive evidence. § 491.074. Prior inconsistent statements are properly admitted after counsel inquires as to whether the witness made the statement and whether the statement is true and in response, the "witness claims to not remember if a prior statement was or was not made." *State v. Reed*, 282 S.W.3d 835, 838 (Mo. banc 2009). Here, defense counsel asked Mr. Mosley if he made the statement, but failed to ask whether the statement was true. Nevertheless, it appears this questioning was sufficient foundation to admit the prior inconsistent statement through another witness. Thus, the trial court erred in preventing Detective Shaw from testifying to Mr. Mosley's prior statements. However, this error did not result in a manifest injustice.

Mr. Mosley's statement that Ms. Alverda was "messing around" with Mr. Bradley was similar to Ms. Austin's testimony. [Petitioner] stated that Ms. Austin would testify that she had seen Ms. Alverda after Thanksgiving with a 5'9" man who terrified Ms. Alverda and that was the last person Ms. Austin had seen with Ms. Alverda. Essentially, the testimony of Mr. Mosley was intended to corroborate Ms. Austin's.

However, the jury did not need the information because Ms. Austin identified [petitioner] as the 5'9" man that she had seen with Ms. Alverda during that time. Thus, the defense no longer had Ms. Austin's testimony to support its rebuttal that [petitioner] was not the last person seen with Ms. Alverda. Admitting the evidence otherwise would have been used to prove that Ms. Alverda had an intimate relationship with Mr. Bradley and that Mr. Bradley was taller than [petitioner], which would have been irrelevant. n.5

> n.5 The evidence would support an inference that someone else had the opportunity or motive to kill Ms. Alverda without any other evidence connecting that individual to the crime, which is irrelevant because evidence that someone else had the opportunity or

-6-

> motive to commit the crime "does not exculpate the defendant, who also had the opportunity [or motive], and committed the crime." *See State v. Wise*, 879 S.W.2d 494, 511 (Mo. banc 1994), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888-89 (Mo. banc 2008).
>
> The trial court did not err in excluding the evidence. Consequently, raising this issue on appeal would not have created a reasonable probability that the outcome of the appeal would have been different. The motion court did not err in finding against ineffectiveness of appellate counsel. [Petitioner's] point is denied.

(Respondent's Exhibit H, pp. 5-6 & 10-12).

The resolution of grounds 2 and 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]

Grounds 2 and 3 are denied.

## GROUNDS 4, 5, 6, 7, & 9

In his fourth ground for relief, petitioner contends that "newly discovered evidence" shows that using a "20 hour hold" to detain petitioner rather than an arrest warrant was unlawful. In his fifth

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

ground for relief, petitioner contends that "newly discovered evidence" shows that trial counsel was ineffective for failing to investigate the false complaint issue. In his sixth ground for relief, petitioner contends that "newly discovered evidence" shows that trial counsel was ineffective for failing to investigate why petitioner was not given a preliminary hearing. In his seventh ground for relief, petitioner contends that "newly discovered evidence" shows that trial counsel was ineffective for failing to investigate why petitioner was indicted on two different days for the same offense and why the amendment of the higher offense was allowed without being submitted to the grand jury. In his ninth ground for relief, petitioner contends that the prosecutor at trial made three errors in his closing argument.

Respondent correctly maintains that grounds 4, 5, 6, 7, and 9 are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise grounds 4, 5, and 6 at any time and that he raised ground 7 only in his pro se 29.15 motion and ground 9 in both his pro se and his amended 29.15 motions. However, neither ground was pursued on appeal. Therefore, petitioner defaulted grounds 4, 5, 6, 7 and 9 by not raising them on appeal from the denial of his Mo. Sup. Ct. 29.15 motion.

-8-

Because petitioner's grounds are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

To the extent that petitioner disagrees with the decisions of his attorneys to abandon certain grounds when proceeding on appeal, he would still not satisfy the "cause" requirement. "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation. . ." Coleman, 501 U.S. at 753. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [there is] no inequity in requiring him to bear the risk of attorney error that results in a procedural default." Id. at 752 (citation omitted). Additionally, because petitioner had no constitutional right to post-conviction counsel, he cannot make the showing required by Strickland. Id. at 752. Therefore, regardless of the propriety of the actions of petitioner's post-conviction attorneys, their actions are attributable to him, and petitioner has procedurally defaulted grounds 4, 5, 6, 7, and 9.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of

-9-

Case 4:11-cv-00797-HFS   Document 11   Filed 02/17/12   Page 9 of 11

constitutional error "with <u>new</u> reliable evidence. . . that was not presented at trial."[3] Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id.</u>, <u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). Despite the use of the phrase "newly discovered evidence" in his complaint, petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 4, 5, 6, 7, and 9. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the <u>Schlup</u> standard for actual innocence. <u>Id.</u> Therefore, federal review of grounds 4, 5, 6, 7, and 9 is barred.

Grounds 4, 5, 6, 7, and 9 are denied.

## GROUND 8

In ground 8, petitioner contends that post-conviction relief counsel was ineffective for failing to call their fingerprint expert to testify at the evidentiary hearing. It has been established that there is no constitutional right to the effective assistance post-conviction counsel. <u>Armstrong v. Iowa</u>, 418 F.3d 924, 927 (8th Cir. 2005). Therefore, ground 8 is without merit.

Ground 8 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." <u>Tennard v. Dretke</u>, 542 U.S. 274, 276 (2004). Because

---

[3]Petitioner should note that "new reliable evidence" is more than mere legal research petitioner has done or unanswered questions he has thought of recently. If the factual evidence was available at the time of trial, it cannot be newly discovered evidence.

-10-

petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

**ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: February 17, 2012.